UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-12227-RWZ

CRAIG JALBERT, *in his capacity
as Trustee for F2 Liquidating Trust*

v.

THE ZURICH SERVICES CORPORATION, *et al.*

MEMORANDUM OF DECISION

September 5, 2018

ZOBEL, S.D.J.

This insurance recovery dispute arises from the SEC investigation and subsequent bankruptcy of F-Squared Investments, an investment management firm. Plaintiff Craig Jalbert brings this case in his capacity as trustee of the F2 Liquidating Trust to recoup from the company's excess insurers approximately $7.7 million in unreimbursed defense costs F-Squared incurred during the investigation.

Defendants have moved for summary judgment, which motions are allowed.

**I.    Factual Background**

The following facts derive from the parties' Statements of Undisputed Facts and responses thereto (Docket ## 39, 43, 45) and all documents filed therewith.

**A.    The SEC Investigation**

On September 23, 2013, the SEC issued an "Order Directing Private Investigation and Designating Officers to Take Testimony" in a matter captioned "In the

Matter of F-Squared Investments, Inc. (B-2855)." See Docket # 42-7. According to this non-public "Formal Order," the SEC had "information that tend[ed] to show that" F-Squared had distributed false and misleading advertisements "in possible violation of" federal securities laws. Id. at 5. Based on that information, the Formal Order directed "that a private investigation be made" and empowered the SEC to issue subpoenas, take evidence, and otherwise carry out the inquiry. See id. at 7-8.

On October 2, 2013, the SEC's Division of Enforcement subpoenaed F-Squared in connection with the investigation, and on October 7 it issued two additional subpoenas to high-ranking F-Squared officers. After counsel for F-Squared specifically requested a copy of the Formal Order, the SEC shared it on October 18, 2013. Over the course of the next year, F-Squared incurred $17.7 million in defense costs responding to the investigation.

### B. F-Squared's Insurance Policies

As is common in the industry, F-Squared maintained several "Directors & Officers" insurance policies intended to cover, inter alia, the costs associated with defending against a formal investigation by the SEC. For the 2012-2013 time period, it maintained two such policies: a Columbia Casualty Company ("Columbia") policy that provided $5 million in coverage and a follow-form[1] policy issued by Federal Insurance Company ("Federal") for an additional $5 million in excess coverage. The policies applied "only to any claim first made against [F-Squared]" between October 3, 2012 and October 3, 2013. Docket # 37-1 at 2.

---

[1] As the descriptor implies, "follow-form" insurance policies provide excess levels of coverage subject to the same terms and conditions as the primary policy.

For the 2013-2014 time period, F-Squared renewed the Columbia and Federal policies and also purchased additional excess coverage from defendants Zurich American Insurance Company ("Zurich") and XL Specialty Insurance Co. ("XL"). The Zurich and XL policies follow the form of the primary Columbia policy, with Zurich providing $5 million in second layer excess coverage (i.e., after exhaustion of the primary Columbia policy and first layer excess Federal policy), and XL, an additional $5 million beyond Zurich. The four 2013-14 policies apply "only to any claim first made against [F-Squared]" between October 3, 2013 and October 3, 2014. Docket # 37-3 at 2.[2]

### C.    F-Squared's Notices to Insurers Regarding the SEC Investigation

In emails sent November 7, 2013, F-Squared notified each of its insurers of the SEC investigation and claimed under each of the policies. Writing to Columbia, F-Squared requested coverage under the 2012-13 policy "or its renewal, which has not yet been received." Docket # 37-7 at 4. Columbia eventually paid the full $5,000,000 limit of liability to F-Squared under the 2012-13 policy, and first-layer excess insurer Federal did likewise. Defendants Zurich and XL, however, denied coverage under their policies, giving rise to the instant dispute.

### D.    Definition of a Claim; When a Claim is Made

The insurance contracts at issue are "claims-made" policies. See Docket # 37-3 at 20 ("[t]he Insurer shall pay Loss on behalf of an Insured resulting from any Claim first made against the Insured during the Policy Period"). As opposed to an "occurrence

---

[2] Because the Zurich and XL policies are follow-form to the primary Columbia policy, the court examines the Columbia policy's language (Docket # 37-3) to resolve this case.

policy," which covers an insured's losses for certain conduct occurring during a policy period, a "claims-made" policy covers the insured's losses for certain claims first made against the insured during the policy period, regardless of when the underlying conduct occurred.  See New England Envtl. Techs. v. Am. Safety Risk Retention Grp., Inc., 738 F. Supp. 2d 249, 255 (D. Mass. 2010).

A "claim" under the policies in this case includes "a formal regulatory proceeding (civil, criminal or administrative) against or formal investigation of an Insured ... against an Insured for a Wrongful Act ...." Docket # 37-3 at 4.[3]   In addition, the policies include specific rules for determining when certain claims are "deemed first made."  Thus, a claim "with respect to a formal investigation" is "deemed first made" upon "an Insured being identified by name in an order of investigation, subpoena, Wells Notice or target letter ... as someone against whom a civil, criminal, administrative, or regulatory proceeding may be brought ...." Id. at 4-5.

## II.    Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)).

---

[3]    A "Wrongful Act" is defined as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committee or attempted by an Insured in rendering, or failing to render, Professional Services."  Docket # 37-3 at 20.

The insurance policies at issue are construed according to their "actual language ... given its plain and ordinary meaning" in keeping with general principles of contract interpretation. Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). "Where [as here] facts are not in dispute, the interpretation and application of the [insurance] policy language is a question of law." Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc., 820 F.3d 36, 41 (1st Cir. 2016), quoting Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 72 (1st Cir. 2007).

## III.  Analysis

Defendants argue that they are entitled to summary judgment because the undisputed facts show that neither is obligated to provide coverage under its policy because the SEC's investigation of F-Squared was a claim first made before each defendant's coverage began. The plain policy language shows that defendants are correct.

First, it is undisputed that the SEC's investigation of F-Squared constitutes a "claim" as the policies define that term. See Docket # 37-3 at 4 ("claim" includes "a formal investigation of an Insured ... for a Wrongful Act."). The dispositive question then is whether this claim was first made during the October 3, 2013 - October 3, 2014 time period covered by the Zurich and XL policies.

The SEC's Formal Order identifies F-Squared by name, alleges numerous "possible violation[s]" of federal securities laws, and directs the commencement of an investigation. Docket # 42-7. This clearly fits within the "deemed-made" clause, as it sufficiently identifies F-Squared "as someone against whom a civil, criminal, administrative, or regulatory proceeding may be brought." Docket # 37-3 at 4-5. Since

that order issued on September 23, 2012, before the coverage period of the Zurich and XL policies, neither defendant is obligated to reimburse F-Squared for its defense costs. See BioChemics, Inc. v. Axis Reinsurance Co., 83 F. Supp. 3d 405, 408 (D. Mass. 2015) (claim not covered where SEC Formal Order naming insured issued prior to claims-made policy's coverage period).

Plaintiff's arguments in opposition are unpersuasive. For example, plaintiff contends that the deemed-made clause does not apply in this case because "a formal order of investigation from the SEC does not identify anyone (including the recipient) as someone against whom a civil, criminal, administrative, or regulatory proceeding may be brought." Docket # 44 at 13. This argument downplays both the plainly expansive language of the deemed-made clause as well as the serious allegations in the SEC's Order. The clause is satisfied by an order that presages the likelihood of proceedings. See Docket # 37-3 at 4-5 (deemed-made clause triggered when insured named in order as someone against whom proceedings "may be brought") (emphasis added). The SEC's September 23, 2012 Formal Order meets that low bar because it initiated a private investigation based on information tending to show that F-Squared had violated numerous federal laws. A reasonable fact finder would be forced to conclude that the Order signified that a "civil, criminal, administrative, or regulatory proceeding" might be brought against F-Squared. See id. The plain language of the policy does not require more than that.

Plaintiff's argument that the SEC Formal Order is not an "order of investigation" under the deemed-made clause is similarly unavailing. See Docket # 44 at 13-14. There is no persuasive reason why the SEC's "Order Directing Private Investigation" is

not an "order of investigation, subpoena, Wells Notice or target letter." Docket # 37-3 at 5 (emphasis added). Plaintiff's argument that the clause's references to target letters and Wells Notice means that the term "order of investigation" refers only to certain "types of formal investigations," Docket # 44 at 15, impermissibly contorts the unambiguous language of the contract.

Finally, plaintiff asserts that his interpretation of the policy is at least rational and that, therefore, the court must deny summary judgment. This argument necessarily assumes that the policy is ambiguous on the relevant points, but it is not. See Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667 (Mass. 2011) ("When confronting ambiguous language, we construe the policy in favor of the insured and against the drafter ....") (emphasis added); see also Brazas, 220 F.3d at 5 ("[I]t does not follow that ambiguity exists solely because the parties disagree as to the provision's meaning."). "Absent ambiguity, [the court] give[s] policy language its plain and ordinary meaning." GRE Ins. Grp. v. Metro. Boston Hous. P'ship, Inc., 61 F.3d 79, 81 (1st Cir. 1995). Here, the plain language of the contract makes clear that the SEC's September 23, 2012 Formal Order triggered the deemed-made clause, thus rendering the SEC's investigation of F-Squared outside the coverage period of the Zurich and XL policies. See Hyfer v. Metropolitan Life Ins. Co., 61 N.E.2d 3, 5 (Mass. 1945) ("A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms.").

## IV. Conclusion

For the foregoing reasons, defendants' motions for summary judgment (Docket ## 36, 40) are allowed.

There remain pending defendants' counterclaims for declaratory judgment. These appear to be mooted by the allowance of summary judgment as to plaintiff's claim. Counsel shall resolve the counterclaims and submit a proposed judgment for the entire case.

|   |   |
|---|---|
|  September 5, 2018  |  /s/Rya W. Zobel  |
| DATE | RYA W. ZOBEL |
|  | SENIOR UNITED STATES DISTRICT JUDGE |